Citibank, N.A. v Yanling Wu (2021 NY Slip Op 04902)





Citibank, N.A. v Yanling Wu


2021 NY Slip Op 04902


Decided on September 1, 2021


Appellate Division, Second Department


Iannacci, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 1, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI
LINDA CHRISTOPHER, JJ.


2019-12634
 (Index No. 710351/16)

[*1]Citibank, N.A., etc., respondent, 
v
Yanling Wu, etc., et al., appellants, et al., defendants.



APPEAL by the defendants Yanling Wu and Perry Sing, in an action to foreclose a mortgage, from an order and judgment of foreclosure and sale (one paper) of the Supreme Court (Denis J. Butler, J.), entered October 29, 2019, in Queens County. The order and judgment of foreclosure and sale, upon (1) an order of the same court entered January 24, 2018, inter alia, granting those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against those defendants, to strike their answer, and for an order of reference, and denying those defendants' cross motion, inter alia, for summary judgment dismissing the complaint insofar as asserted against them, and (2) an order of the same court entered July 18, 2018, granting the same relief to the plaintiff and appointing a referee to compute the amount due to the plaintiff, among other things, granted the plaintiff's motion to confirm a referee's report and for a judgment of foreclosure and sale, and directed the sale of the subject property.



Harvey Sorid, Uniondale, NY, for appellants.
Stein Wiener & Roth, LLP (Reed Smith LLP, New York, NY [James N. Faller, Andrew B. Messite, and Brenda Beauchamp Ward], of counsel), for respondent.



IANNACCI, J.


OPINION & ORDER
The principal question presented on this appeal is whether, in seeking to foreclose a mortgage on real property, the plaintiff bank was required to allege in its complaint that it had obtained a license to act as a "debt collection agency" pursuant to Administrative Code of the City of New York § 20-490. We answer that question in the negative, as we conclude that the plaintiff was not required to be licensed as a "debt collection agency" pursuant to Administrative Code § 20-490 in order to prosecute this mortgage foreclosure action.
On December 13, 2006, the defendant Yanling Wu executed a note agreeing to repay to Approved Funding Corp. a loan in the principal sum of $580,000. The note was secured by a mortgage executed by Yanling Wu and the defendant Perry Sing (hereinafter together the defendants) on real property located in Bayside.
In 2016, the plaintiff, which acquired the subject note after the defendants had allegedly defaulted in making payment, commenced this action against the defendants, among others, to foreclose the mortgage. The action does not seek a deficiency judgment. The defendants served an answer in which they asserted several affirmative defenses, including that the plaintiff lacked standing and that the plaintiff failed to allege that it had obtained a license to act as a "debt collection agency" pursuant to Administrative Code § 20-490.
The plaintiff moved, inter alia, for summary judgment on the complaint, to strike the defendants' answer, and for an order of reference. The defendants cross-moved, inter alia, in effect, pursuant to CPLR 3211(a)(7) to dismiss the complaint insofar as asserted against them for failure [*2]to allege that the plaintiff had obtained the aforementioned license (see CPLR 3015[e]), or for summary judgment dismissing the complaint insofar as asserted against them, on the basis of lack of standing, the failure to prove compliance with RPAPL 1303, and the failure to demonstrate a default in payment on the note. In response to the branch of the cross motion, in effect, seeking dismissal under CPLR 3211(a)(7), the plaintiff argued that it was not required to be licensed as a "debt collection agency" under the Administrative Code.
In an order entered January 24, 2018, the Supreme Court granted the plaintiff's motion and denied the defendants' cross motion. In an order entered July 18, 2018, the court granted the same relief to the plaintiff and appointed a referee to compute the amount due to the plaintiff. In an order and judgment of foreclosure and sale entered October 29, 2019, the court, inter alia, granted the plaintiff's motion to confirm the referee's report and for a judgment of foreclosure and sale, and directed the sale of the subject property. The defendants appeal from the order and judgment of foreclosure and sale.
We first address the question of whether the plaintiff was required to be licensed pursuant to Administrative Code § 20-490, in order to prosecute this mortgage foreclosure action. Administrative Code § 20-490 makes it unlawful "for any person to act as a debt collection agency without first having obtained a license." A "debt collection agency" is defined as "a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another and shall also include a buyer of delinquent debt who seeks to collect such debt either directly or through the services of another by, including but not limited to, initiating or using legal processes or other means to collect or attempt to collect such debt" (Administrative Code § 20-489[a]). "Debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes" (id. § 20-489[d]). The terms "collect a debt" or "debt collection" are not defined.
The defendants contend that the foreclosing plaintiff in this case meets the foregoing definition of "debt collection agency." We disagree, for the reasons that follow.
Initially, Real Property Actions and Proceedings Law article 13, which governs mortgage foreclosure actions, distinguishes between an action to recover any part of the mortgage debt and an action to foreclose the mortgage (see RPAPL 1301). "An action to foreclose a mortgage is not an action to recover the mortgage debt from the mortgagor personally, but to collect it out of the land by enforcing the lien of the mortgage" (Jamaica Sav. Bank v M.S. Inv. Co., 274 NY 215, 219 [internal quotation marks omitted]; see 1 Bergman on New York Mortgage Foreclosures § 2.02 [2021]). Thus, the foreclosure action is properly characterized as an action to enforce a security interest in property, rather than to collect money directly from a debtor (see 1 Bergman on New York Mortgage Foreclosures § 2.02; see also Vien-Phuong Thi Ho v ReconTrust Co., NA, 858 F3d 568, 571-573 [9th Cir]).
In any case, to the extent a mortgage foreclosure action constitutes debt collection (cf. Obduskey v McCarthy & Holthus LLP, ___ US ___, ___, 139 S Ct 1029, 1033-1034), the plaintiff was not a "debt collection agency" (Administrative Code § 20-489[a]). As reflected above, the Administrative Code first defines "debt collection agency" as: "a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another" (id.). Since the plaintiff is the owner of the subject note, its foreclosure action does not constitute an "attempt to collect debts owed or due or asserted to be owed or due to another" (id. [emphasis added]; see Henson v Santander Consumer USA Inc., ___ US ___, ___, 137 S Ct 1718, 1721-1722 [likewise interpreting the Fair Debt Collection Practices Act (15 USC § 1692a[6]), a similar provision of federal law]; Pirrelli v OCWEN Loan Servicing, LLC, 129 AD3d 689, 693; Citibank [S.D.] N.A. v Sablic, 55 AD3d 651, 653; Doherty v Citibank [South Dakota] N.A., 375 F Supp 2d 158, 161-162 [ED NY]).
The definition of "debt collection agency" also includes "a buyer of delinquent debt who seeks to collect such debt" (Administrative Code § 20-489[a]). Although the plaintiff here obtained the note after the defendants were allegedly in default, the plaintiff also does not qualify as a "debt collection agency" under this expanded definition. First, the language of Administrative Code § 20-489(a) is ambiguous in the sense that it is unclear whether the requirement that the "principal purpose" of the business be the collection of debt is intended to apply to the entire, expanded definition of "debt collection agency," or only to the first part of the definition pertaining to the collection of debts owed to another. To the extent the "principal purpose" requirement also [*3]applies to the expanded definition of "a buyer of delinquent debt who seeks to collect such debt," the defendants did not show, or even attempt to argue, that it is the "principal purpose" of the plaintiff, Citibank, N.A., to buy and collect delinquent debt. Thus, to the extent that the "principal purpose" requirement modifies the entire definition of "debt collection agency," the plaintiff would not fit within that definition.
In any event, even if the "principal purpose" requirement is not applicable and the literal language of the expanded definition of "debt collection agency" covered an owner of a note acquired after default, who is pursuing judicial mortgage foreclosure, we conclude that such a literal interpretation does not reflect the legislative intent of the relevant Administrative Code provisions. "[W]e are not bound to accord a literal interpretation to a statutory definition if to do so would lead to an unreasonable result or defeat the general purpose and manifest policy intended to be promoted" (Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen, 69 NY2d 246, 252).
The legislative declaration accompanying the relevant Administrative Code provisions explains that the New York City Council was concerned with "unscrupulous collection agencies in operation that practice[d] abusive tactics"—"tactics which would shock the conscience of ordinary people"—such as "threatening delinquent debtors, or calling such people at outrageous times of the night" (Administrative Code § 20-488). Due to "the vulnerable position consumers [found] themselves in when dealing with these agencies" (id.), the Council resolved to institute a licensing requirement, among others, to protect consumers against "those agencies who would abuse their privilege of operation" (id.).
At the time the subject provision was first enacted, it contained only the definition of "debt collection agency" pertaining to the collection of debts owed to another (see id. § 20-489[a] [former § B32-97.1(c)]; Eric M. Berman, P.C. v City of New York, 25 NY3d 684, 688). However, as explained by the Court of Appeals, the "debt collection industry . . . continued to grow," with consumer debt "being purchased at a steep discount by third parties" (Eric M. Berman, P.C. v City of New York, 25 NY3d at 688). These circumstances prompted the City Council to enact an amendment in 2009, expanding the definition of "'debt collection agency' to 'include a buyer of delinquent debt who seeks to collect such debt'" (id., quoting Administrative Code § 20-489[a]). The Council's immediate concern, as reflected in the legislative history pertaining to that amendment, was the proliferation of credit card debt and the sale of such debt to debt buyers (Rep of Comm on Consumer Affairs, Consumer Debt Buyers [hereinafter Committee Report], 2009 NY City Legis Ann at 71-72). The Committee Report explained that while debt collection practices historically included outreach to the debtor, the new tactic being utilized by debt buyers was to proceed directly to New York City Civil Court, where most actions resulted in default judgments, many of which were not supported by valid evidence (see id. at 72; Eric M. Berman, P.C. v City of New York, 25 NY3d at 688). Debt buyers, who accounted for 90% of such consumer credit collection actions filed in Civil Court, had taken the position that they were "immune to licensing requirements" because they "outsource[d] the actual collection duties to other parties, such as debt collection law firms" (Committee Report at 72). The expanded definition of "debt collection agency" was intended to clarify that such debt buyers came under the umbrella of the Administrative Code's protections for consumers.
The Administrative Code seeks to protect consumers from abusive tactics by instituting, in addition to the licensing requirement, certain required collection practices, including, requiring communications with consumers to provide "a call-back number to a phone that is answered by a natural person" (Administrative Code § 20-493.1[a][i]), "the name of the person to call back" (id. § 20-493.1[a][iv]), and "the amount of the debt" (id. § 20-493.1[a][v]). A debt collection agency is further required, upon the consumer's request for verification of the debt, to furnish written documentation identifying the original creditor, and itemizing the principal balance of the debt and other charges allegedly due (see id. § 20-493.2[a]). A debt collection agency may not attempt to collect or contact a consumer until such verification is provided (see id.).
A judicial foreclosure action such as the one at bar does not constitute the sort of tactics "shocking to the conscience of ordinary people"—like phone calls at unreasonable hours and other threatening behavior—that the subject Administrative Code provisions were enacted to address. Furthermore, the particular requirements and prohibitions placed upon debt collectors under the Administrative Code are concerned with ensuring that consumers can verify that payment on a debt is actually due, learn the correct amount of the debt, and meaningfully communicate with the debt collection agency about the debt (see id. §§ 20-493.1, 20-493.2). In the context of judicial [*4]foreclosure, the state statutory scheme operates to protect homeowners and ensure fairness in the process, in a far more comprehensive manner and in ways that might not be entirely consistent with the Administrative Code provisions.
For example, RPAPL 1304 requires that at least 90 days before a foreclosure action is commenced, a notice be sent to the borrower or borrowers, the content of which is specified in the statute. Among other things, the statute dictates what contact information should be included. Specifically, it requires that the notice include contact information for at least five government approved housing counseling agencies, as well as for the Office of the Attorney General's Homeowner Protection Program and the New York State Department of Financial Services' helpline (see id. § 1304[1], [2]). Thus, RPAPL 1304 mandates the provision of contact information for independent entities that can assist mortgagors in dealing with the parties to which they are allegedly indebted. RPAPL 1304 also requires the notice to set forth certain facts about the default, including the amount due (see id.). The detailed notice mandated by this statute renders much of the verification requirement of Administrative Code § 20-493.2(a) superfluous.
The foreclosing plaintiff is also required to include a notice with the summons and complaint, containing further advisements to the borrower about foreclosure and its consequences, including ways that the borrower can protect himself or herself (see RPAPL 1303). While the Administrative Code focuses on facilitating a debtor's communication with the debt collection agency, the RPAPL 1303(3) notice advises defendants to "immediately contact an attorney or [a] local legal aid office."
Moreover, while the City Council was concerned with Civil Court actions founded on invalid proof, in "any residential foreclosure action involving a home loan" (CPLR 3012-b[a]), the complaint must include a certification by the plaintiff's attorney that "the attorney has reviewed the facts of the case and that, based on consultation with representatives of the plaintiff identified in the certificate and the attorney's review of pertinent documents, . . . there is a reasonable basis for the commencement of such action and that the plaintiff is currently the creditor entitled to enforce rights under such documents" (id.).
Further protecting the rights of mortgagors, in any "residential foreclosure action involving a home loan" (id. § 3408[a][1]), the court is required to hold a settlement conference to discuss "the relative rights and obligations of the parties" (id.) and to determine whether "the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home," including a loan modification or other loss mitigation options (id.).
In light of these and other specific state statutory requirements enacted to protect homeowners in residential foreclosure, we conclude that the City Council did not intend to include a plaintiff pursuing a judicial foreclosure action such as this one within the definition of "debt collection agency" set forth in the Administrative Code.
Moreover, this conclusion is supported by the interpretation of the United States Supreme Court of provisions of the Fair Debt Collection Practices Act (15 USC § 1692 et seq.; hereinafter FDCPA), which are similar to the subject Administrative Code provisions (see Obduskey v McCarthy & Holthus LLP, ___ US ___, 139 S Ct 1029; see also Eric M. Berman, P.C. v City of New York, 25 NY3d at 691 [looking to federal case law under the FDCPA for guidance in interpreting the subject provisions of the Administrative Code]). In Obduskey, the Supreme Court determined that the general definition of "debt collector" provided in the FDCPA did not include "those whose 'principal purpose . . . is the enforcement of security interests'" (Obduskey v McCarthy & Holthus LLP, ___ US at ___, 139 S Ct at 1033, quoting 18 USC § 1692a[6]), at least where the business was engaged in nonjudicial foreclosure proceedings [FN1]. The FDCPA includes a provision prohibiting a "debt collector" from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" under certain enumerated circumstances (15 USC § 1692f[6]). The definition of "debt collector" contained in the FDCPA provides: "For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of [*5]interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests" (id. § 1692a[6]).
The United States Supreme Court reasoned in Obduskey that, if the general definition of "debt collector" was intended to include entities enforcing security interests, this quoted language in the definition of "debt collector" would not have been necessary (see Obduskey v McCarthy & Holthus LLP, ___ US at ___, 139 S Ct at 1037). The fact that the general definition of "debt collector" in the FDCPA was interpreted to exclude parties enforcing security interests provides guidance on the proper interpretation of the definition of "debt collection agency" set forth in the Administrative Code, even though the Code does not contain a provision similar to 15 USC § 1692f(6), such that explicit reference to enforcement of security interests in the Code was not necessary (see generally Eric M. Berman, P.C. v City of New York, 25 NY3d at 691). Indeed, the United States Supreme Court posited that "Congress may well have chosen to treat security-interest enforcement differently from ordinary debt collection in order to avoid conflicts with state nonjudicial foreclosure schemes" (Obduskey v McCarthy & Holthus LLP, ___ US at ___, 139 S Ct at 1037). Here, as we have explained, the state statutory scheme enacted to protect homeowners in foreclosure is far more comprehensive, and at the least, renders partially redundant, the provisions of the Administrative Code pertaining to debt collection agencies.
For all of the foregoing reasons, we conclude that the plaintiff in the instant action was not required to be licensed as a "debt collection agency" with respect to its prosecution of this foreclosure action. Thus, the complaint was not subject to dismissal under CPLR 3211(a)(7) for the failure of the plaintiff to plead that it had obtained such a license (see CPLR 3015[e]).
As to the summary judgment motions, the plaintiff demonstrated, prima facie, its standing to commence the action, as evidenced by its attachment of the note, endorsed in blank, to the summons and complaint at the time the action was commenced (see U.S. Bank N.A. v Rowe, 194 AD3d 978; Wells Fargo Bank, N.A. v Kohli, 173 AD3d 941, 942). Similarly, the plaintiff demonstrated, prima facie, its compliance with RPAPL 1303, by submitting affidavits of service establishing proper service upon the defendants of the notice required by that statute (see U.S. Bank NA v Smith, 191 AD3d 726; Onewest Bank, N.A. v Mahoney, 154 AD3d 770, 772). The defendants failed to raise a triable issue of fact as to either standing or the plaintiff's compliance with RPAPL 1303.
Nevertheless, the plaintiff failed to sustain its initial burden of demonstrating that the defendants defaulted in the repayment of the subject note. To establish such default, the plaintiff relied upon an affidavit of a representative of its loan servicer, whose averment regarding the defendants' default was based upon her review of unidentified business records. Inasmuch as no business records were attached to, or otherwise incorporated into, the affidavit, this averment constituted inadmissible hearsay lacking in probative value (see Federal Natl. Mtge. Assn. v Brottman, 173 AD3d 1139, 1141; Bank of N.Y. Mellon v Gordon, 171 AD3d 197, 205-206).
Although certain records, which may be business records on which the original affidavit was based, were submitted by the plaintiff with its reply papers, it is axiomatic that in order to establish prima facie entitlement to judgment as a matter of law in a foreclosure action, a plaintiff must submit evidence of default (see e.g. HSBC Bank USA, N.A. v Bhatti, 186 AD3d 817, 819). The moving party "cannot meet its prima facie burden by submitting evidence for the first time in reply" (U.S. Bank N.A. v Hammer, 192 AD3d 846, 849; see Arriola v City of New York, 128 AD3d 747, 749).
Accordingly, those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against the defendants, to strike their answer, and for an order of reference should have been denied without regard to the sufficiency of the defendants' opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853). However, as the defendants also did not affirmatively demonstrate their prima facie entitlement to judgment as a matter of law dismissing the complaint insofar as asserted against them, that branch of their cross motion was properly denied.
The defendants' remaining contentions either are without merit or need not be reached in light of our determination.
Accordingly, the order and judgment is reversed, on the law, those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against the defendants Yanling Wu and Perry Sing, to strike their answer, and for an order of reference are denied, the plaintiff's motion to confirm the referee's report and for a judgment of foreclosure and [*6]sale is denied, and the orders entered January 24, 2018, and July 18, 2018, are modified accordingly.
DILLON, J.P., CONNOLLY and CHRISTOPHER, JJ., concur.
ORDERED that the order and judgment is reversed, on the law, with costs, those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against the defendants Yanling Wu and Perry Sing, to strike their answer, and for an order of reference are denied, the plaintiff's motion to confirm the referee's report and for a judgment of foreclosure and sale is denied, and the orders entered January 24, 2018, and July 18, 2018, are modified accordingly.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court



Footnotes

Footnote 1:Although the United States Supreme Court noted, without deciding, that judicial foreclosure proceedings might warrant different treatment due to the possibility of obtaining a deficiency judgment (see Obduskey v McCarthy & Holthus LLP, ___ US at ___, 139 S Ct at 1039), here, no deficiency judgment was sought or authorized.