Filed 9/1/21  Redjai v. Barrett Daffin Frappier Treder & Weiss CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAMIN REDJAI, | |
| Plaintiff and Appellant, | G058616 |
| v. | (Super. Ct. No. 30-2016-00885843) |
| BARRETT DAFFIN FRAPPIER TREDER & WEISS, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Richard Y. Lee, Judge.  Affirmed.

IronCastle Law and Michele E. IronCastle for Plaintiff and Appellant.

Barrett Daffin Frappier Treder & Weiss and Edward A. Treder for Defendant and Respondent.

\*          \*          \*

# INTRODUCTION

This appeal arises from a judgment in favor of defendant Barrett Daffin Frappier Treder & Weiss, LLP (Barrett). In an earlier opinion, we affirmed the judgment entered in favor of codefendant Nationstar Mortgage, LLC (Nationstar) and against plaintiff Ramin Redjai. (*Redjai v. Nationstar Mortgage, LLC* (Apr. 14, 2021, G058005) [nonpub. opn.] (*Redjai I*).) In 2005, Redjai secured a refinancing loan for his property through a deed of trust. When Redjai defaulted on the loan, Barrett, as trustee for Nationstar, recorded a notice of default on the loan and notice of trustee's sale through a nonjudicial foreclosure. Redjai sent a request for debt validation to Nationstar and Barrett and received accountings showing different balances claimed. Barrett later rescinded the notice of default at the direction of Nationstar and no foreclosure ever occurred.

Before the rescission, Redjai sued Nationstar and Barrett for wrongful foreclosure, violations of the Homeowner Bill of Rights, unfair debt collection, deceit, declaratory relief, and other causes of action. This appeal involves both Redjai's initial complaint and an amended complaint. On the initial complaint, the trial court granted Barrett's motion for summary adjudication on some of Redjai's causes of action. On the surviving causes of action, the court denied Redjai's motion for summary judgment and granted Barrett's motion for judgment on the pleadings with leave to amend all but one of the causes of action. When Redjai filed an amended complaint, Barrett filed a demurrer and the court sustained the demurrer without leave to amend.

Redjai challenges the trial court's rulings on all four motions. We conclude no error has been shown and the trial court correctly ruled in favor of Barrett on all four motions because no foreclosure is pending, the notice of default has been rescinded, Redjai has not shown the beneficial interest under his trust deed is void, and Barrett was statutorily privileged as a trust deed trustee. As we will discuss, none of Redjai's arguments on appeal has merit. We therefore affirm the judgment.

**FACTUAL BACKGROUND**[1]

I. REDJAI'S SECURED LOAN, MODIFICATION PAYMENTS, AND BANKRUPTCY DISCHARGE

As we summarized in *Redjai I*, *supra*, G058005, Redjai refinanced his home loan in 2005, signing a trust deed to secure a promissory note for about $1.3 million. The lender was Countrywide Home Loans, Inc. (Countrywide) and Mortgage Electronic Registration Systems, Inc. (MERS) was the beneficiary "acting solely as a nominee for" Countrywide. In 2008, Bank of America purchased Countrywide.

In September 2009, Redjai entered into a trial loan modification agreement with Bank of America and, over the next 10 months, made about $49,000 in periodic payments. Redjai made his last payment in July 2010 and filed a voluntary bankruptcy petition in January 2011. Four months later, the bankruptcy court discharged Redjai's liability for personal debts, but not the mortgage debt.

After the bankruptcy discharge, Nationstar informed Redjai it was the new loan servicer for Redjai's refinance loan, as successor to Bank of America. Redjai informed Nationstar that Bank of America never accounted for the $49,000 Redjai paid Bank of America. Over the next few years, Redjai and Nationstar discussed Redjai's claim about discrepancies in the amount owed on the loan and Redjai's failure to make any further payments on the debt.

II. ASSIGNMENTS OF THE TRUST DEED

In 2011, MERS had assigned the trust deed to U.S. Bank National Association (U.S. Bank), which received the assignment "as trustee, for the benefit of Harborview 2005-2 Trust Fund." Two years later, in 2013, U.S. Bank executed a

---

[1] We limit our summary of facts to those relevant to the appellate issues raised with respect to Barrett.

corporate assignment of the trust deed, giving Nationstar "all beneficial interest under" the trust deed.

In December 2015, Nationstar designated Barrett as the new trustee. Specifically, Barrett signed a "Substitution of Trustee" as Nationstar's "Attorney in Fact," which was recorded in the county recorder's office. One day later, Barrett initiated proceedings to sell Redjai's property when it recorded a "Notice of Default and Election to Sell Under Deed of Trust" (default notice). The default notice alleged a balance of $397,145.53 owed and advised a foreclosure sale of the property would occur if the balance was not timely paid. Redjai sent a request for debt validation to both Nationstar and Barrett and, over the course of a few months, received multiple accountings showing different balances claimed. In January 2016, Barrett sent a reinstatement quote to Redjai, representing that $408,025.19 had to be paid to stop the foreclosure process. Two months later, in March 2016, Barrett recorded a "Notice of Trustee's Sale."

The following month, Nationstar assigned its interest under the trust deed back to U.S. Bank, identified this time "as trustee for [the benefit of] Harborview Mortgage Loan Trust 2005-2, Mortgage Loan Pass-Through Certificates, Series 2005-2." That same day, another document entitled "Substitution of Trustee" was recorded. It was signed by an employee for Nationstar and again designated Barrett as the trust deed's new trustee. In April 2018, Barrett recorded a notice of rescission of the default notice. No foreclosure sale of the property has ever occurred.

## PROCEDURAL HISTORY

Redjai's appeal arises from both his initial complaint and first amended complaint. Other than one aspect we discuss *post*, the two iterations of the complaint do not materially differ for purposes of our discussion. Redjai's allegations dispute the amount of debt owed under the refinance loan and the defendants' rights to enforce the loan's security interest against his property. Redjai's initial complaint alleged 12 causes of action for: (1) wrongful foreclosure; (2) filing a void notice of default (Civ. Code,

4

§ 2923.55); (3) filing an inaccurate declaration on the amount owed in the default notice (*id.*, § 2924.17); (4) cancellation of the default notice and notice of trustee's sale; (5) violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL); (6) violation of the Fair Debt Collections Practices Act (15 U.S.C. § 1692 et seq.) (FDCPA); (7) deceit; (8) fraud; (9) constructive fraud; (10) declaratory relief; (11) violation of the Truth In Lending Act (15 U.S.C. § 1641); and (12) negligence. The fraud cause of action was the only one not alleged against Barrett.

Nationstar filed a motion for summary judgment[2] and Barrett filed a motion to join Nationstar's motion or, in the alternative, for summary adjudication (the MSA). The court granted summary adjudication in favor of Barrett on Redjai's first, second, third, fourth, and twelfth causes of action. On his remaining causes of action, Redjai filed a motion for summary judgment (the MSJ) and Barrett filed a motion for judgment on the pleadings (the MJP). In support of his MSJ, Redjai submitted a declaration by Marla Giddings, his expert witness on real property transactions, to which Barrett filed objections.

In December 2018, before the trial court heard Barrett's MJP, the parties requested a trial continuance but stipulated that the filing deadline for all "dispositive motions" would remain tied to the then-scheduled February 2019 trial date. The court continued trial to August 2019 and approved the parties' stipulation by entering an order that stated "[t]he statutory motion cut-off date for pre-trial dispositive [motions] is based on" the February trial date.

Five months later, in May 2019, the trial court denied Redjai's MSJ and granted Barrett's MJP on Redjai's six remaining causes of action against Barrett. The court granted Redjai leave to amend his complaint for all but his declaratory relief cause of action. The procedural status of the case changed when Redjai filed a first amended

---

[2] Nationstar's motion is not at issue in this appeal.

5

complaint (the FAC) the following month realleging his five surviving causes of action: (1) violation of the FDCPA; (2) deceit; (3) constructive fraud; (4) violation of the Truth In Lending Act; and (5) violation of the UCL.

Barrett filed a demurrer to the FAC. Redjai objected to the demurrer based on the motions deadline stipulation discussed *ante*, and Barrett requested an order confirming its demurrer could be adjudicated on its merits. The trial court granted Barrett's request and denied Redjai's requests to enforce the stipulation and strike Barrett's demurrer.

In September 2019, the trial court heard argument on Barrett's demurrer and sustained it without leave to amend. The court subsequently entered judgment in Barrett's favor and Redjai appealed.

## DISCUSSION

Redjai challenges the trial court's orders granting in whole or in part all three of Barrett's motions—the MSA, the MJP, and the demurrer—as well as the court's order denying Redjai's MSJ. Redjai does not challenge the court's rulings that rejected his fourth cause of action (seeking cancellation of the default notice and trustee's sale notice), ninth cause of action (for constructive fraud), and eleventh cause of action (for violation of the Truth In Lending Act). Accordingly, we do not discuss those claims. We address first Redjai's challenges to the trial court's rulings related to Barrett's MSA, then the rulings related to Redjai's MSJ,[3] Barrett's MJP, and finally Barrett's demurrer.

_____

[3] Although Barrett correctly notes that Redjai did not challenge the court's denial of his motion by a writ petition within 20 days after service of the written notice of entry of the order (Code Civ. Proc., § 437c, subd. (m)(1)), Redjai can still challenge the denial of his motion on appeal from the judgment. (See *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 344.)

6

I.      BARRETT'S MSA WAS PROPERLY GRANTED AS TO THE FIRST, SECOND, THIRD, AND TWELFTH CAUSES OF ACTION OF REDJAI'S INITIAL COMPLAINT

We review a summary adjudication motion ruling de novo. (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819.) The moving party bears the initial burden of production to make a prima facie showing that no triable issue of material fact exists and that the party is therefore entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) If the moving party carries this burden, the burden shifts to the opposing party to make a prima facie showing a triable issue of material fact exists. (*Ibid.*) The moving party at all times bears the burden of persuasion. (*Ibid.*)

The moving party's papers are strictly construed and the opposing party's papers are liberally construed, with all doubts on the propriety of granting summary judgment resolved in favor of denying it. (*Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 502.) Similarly, we strictly construe the moving party's evidence and liberally construe the opposing party's evidence. (*City of Vista v. Robert Thomas Securities, Inc.* (2000) 84 Cal.App.4th 882, 886.)

## A. Redjai's Evidentiary Objections Do Not Provide a Ground to Reverse the MSA Grant

As part of his opposition to the MSA, Redjai filed written objections to Barrett's evidence. Although the trial court did not explicitly rule on his objections, Redjai has waived his appellate arguments on all objections except one, because he presents no meaningful argument as to why the court erred by admitting the evidence. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) ["'[w]e are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument . . . allows this court to treat the contentions as waived'"].)

7

The one exception to this waiver is Redjai's objection to a "limited power of attorney" that Barrett offered to the trial court through both a request for judicial notice and a declaration by Barrett's senior vice president, Jorge Rios-Jimenez. According to the face of the power of attorney document, it was signed and recorded in 2014, and purportedly authorized Barrett to act as "Nationstar's true and lawful attorney-in-fact" and expressly authorized Barrett to take certain actions in the name of Nationstar.

In the trial court, Redjai objected to the document as hearsay and also asserted it lacked foundation and was not authenticated. In his appellate brief, Redjai argues that because the document was purportedly signed by Nationstar, it could not have been properly authenticated by Barrett and was therefore inadmissible. In the absence of that document, Redjai argues, there was no evidence that Barrett was authorized to take any actions with regard to Redjai's property. Given the court's lack of a ruling on the objection, we review Redjai's argument on the point de novo. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 (*Reid*).)

Redjai asserts the recorded power of attorney "is the *only document* that Barrett has provided as *evidence of its authority to work for Nationstar*" (boldface omitted) and that because "Barrett has not proven its authority to act as the trustee for [Redjai]'s [p]roperty, the [c]ourt erred in granting Barrett's MSA." Redjai's argument fails because Rios-Jimenez's declaration asserted that, among other things, Barrett received from Nationstar "instructions to proceed with . . . foreclosure [on Redjai's property] in the name of Nationstar." This part of the declaration was itself sufficient to shift the burden of production on the point of Barrett's relationship with Nationstar to Redjai. Because Redjai has waived any other arguments about the evidentiary value of the declaration, Redjai's argument that Barrett did not prove its authorization to act as a trustee of Redjai's 2005 trust deed fails and Redjai has not demonstrated an evidentiary ground for reversal of the trial court's grant of the MSA.

8

*B. The Trial Court's MSA Rulings on the Merits of Redjai's Causes of Action*

### 1. Wrongful Foreclosure

On Redjai's first cause of action for wrongful foreclosure, the trial court granted summary adjudication because the noticed foreclosure sale had been cancelled and no foreclosure had occurred. The court ruled correctly. Outside of limited relief for violations of statutory provisions such as the Homeowner Bill of Rights, a borrower such as Redjai cannot litigate a preemptive judicial action to determine whether an entity can foreclose. (*Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 814 (*Saterbak*); see *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 (*Yvanova*).)

### 2. Homeowner Bill of Rights Violations

Redjai's second and third causes of action alleged Barrett violated the Homeowner Bill of Rights. Specifically, the second cause of action alleged Barrett's recorded default notice contained a purportedly false declaration made *by Nationstar*, asserting Nationstar had diligently tried to contact Redjai before the default notice was recorded. (Civ. Code, § 2923.55 [prerecording requirements for default notice]).[4] Redjai's third cause of action alleged the default notice was inaccurate as to the amount Redjai owed. (*Id.*, § 2924.17 [accuracy requirements for recorded declarations].)

Even assuming that Redjai could allege a Civil Code section 2923.55 violation against Barrett as a trustee, Redjai could obtain neither damages nor injunctive relief in this case because the purported violation would have already been remedied. The preforeclosure remedy available to Redjai for a violation of that statute was a postponement of the foreclosure sale until the violation was remedied. (*Id.*, § 2924.12, subd. (a).) Because Barrett rescinded the default notice, Redjai was not entitled to relief.

---

[4] We discuss the version of Civil Code section 2923.55 in effect when it was allegedly violated in 2015. (Stats. 2013, ch. 76, § 15 [repealed in 2018 by sunset provision]; Stats. 2018, ch. 404, § 6 [recodified with minor alterations, effective Jan. 1, 2019].)

Therefore, Barrett was entitled to summary adjudication as a matter of law on Redjai's second cause of action.

The same logic applies to Redjai's third cause of action. Civil Code "[s]ection 2924.17 creates a procedural right directed at the requirements for" the declaration the mortgage servicer is required to provide under Civil Code section 2923.55 when a notice of default is recorded. (*Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 162.) A trustee's duty under Civil Code section 2924.17 is to include a mortgage servicer's section 2923.55 declaration with a default notice and the record is clear Barrett did so in this case. Redjai has not shown how section 2924.17's other requirements apply to Barrett as a trustee. Because Redjai brought this action preforeclosure, the undisputed rescission of the default notice means Barrett was entitled to summary adjudication on Redjai's third cause of action because Redjai was not entitled to relief for the purported violation.

3. Negligence

Redjai's 12th cause of action alleged general negligence, asserting Barrett had "a duty to exercise reasonable care and skill to refrain from taking any action against [Redjai] that [it did] not have the legal authority to do." The trial court found Redjai's negligence claim failed "for want of a duty of care" owed by Barrett.

The trial court correctly granted summary adjudication on this cause of action because no evidence was presented that Barrett's conduct went beyond its role as a trustee. "'"The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes [for nonjudicial foreclosure]. No other common law duties exist."'" (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 819.) "The trustee under a deed of trust 'is not a true trustee and owes no fiduciary obligations; [it] merely acts as a common agent for the trustor and beneficiary of the deed of trust. . . . [The trustee's] only duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the

10

deed of trust.'" (*Heritage Oaks Partners v. First American Title Ins. Co*. (2007) 155 Cal.App.4th 339, 345.)

Redjai cites *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7 (*Munger*), to argue a trustee can be liable to a trustor "for damages sustained from an illegal, fraudulent or willfully oppressive sale of property under a power of sale contained in a mortgage or trust deed, on the basic principle of tort liability declared in [Civil Code section ] 1708." But that case is not on point.

In *Munger*, a trustee completed a foreclosure sale after refusing to accept a tender of payment that would have cured the default justifying the sale. (*Munger, supra*, 11 Cal.App.3d at pp. 5-6.) The trial court ruled in favor of the plaintiff who had tendered payment; on appeal, the defendant who had insisted the trustee refuse the tender challenged the trial court's standard for measuring damages and the sufficiency of the evidence supporting the court's damages finding. (*Id.* at p. 6.)

The issue of whether the trustee owed the plaintiff a duty of care was not disputed in *Munger* and indeed, the appellate court expressly cited the nonjudicial foreclosure statute when it discussed the trustee's liability. (*Munger, supra*, 11 Cal.App.3d at p. 8 [citing right to cure default under Civ. Code, § 2924c].) Additionally, the completed foreclosure sale in that case (*id*. at pp. 5-6) completely distinguishes *Munger* from this preforeclosure case. (See *Saterbak, supra*, 245 Cal.App.4th at p. 814 ["California courts do not allow such preemptive suits because they 'would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature'"].) *Munger* does not support a conclusion that a trustee owes a general duty of care outside of a governing deed of trust and the nonjudicial foreclosure statutes.

Redjai asserts that "Barrett did not have authority to record" the default notice and "intentionally and maliciously recorded" a notice of trustee's sale "knowing that there was an ongoing dispute regarding the alleged debt owe[d]." None of his points

11

implicates conduct that lies outside the scope of Redjai's trust deed and governing nonjudicial foreclosure statutes.  (See *Citrus El Dorado, LLC v. Chicago Title Co.* (2019) 32 Cal.App.5th 943, 945.)

The trial court correctly concluded Redjai's failure to prove the existence of a duty by Barrett to Redjai was dispositive of Redjai's negligence claim.  The court correctly granted summary adjudication in favor of Barrett on Redjai's first, second, third, and twelfth causes of action.

## II.     REDJAI'S MSJ WAS PROPERLY DENIED

Next, we address Redjai's contention that the trial court erred in denying his MSJ against Barrett.  Specifically, Redjai challenges the denial of his motion as to his fifth, sixth, seventh, and tenth causes of action, for violation of the UCL, violation of the FDCPA, deceit, and declaratory relief.

To succeed on his MSJ, Redjai had the burden to establish that undisputed facts supported each element necessary to his causes of action.  (See *Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289-290.)  Redjai submitted his own declaration as well as a declaration from Marla Giddings, his expert witness.  In the trial court, he relied on Giddings's declaration to argue that recorded documents such as assignments of his 2005 trust deed were "void" and that Bank of America had discharged Redjai's refinance loan debt before Nationstar became the servicer for the debt in September 2013.

*A. The Trial Court Did Not Err in Excluding the Declaration of Redjai's Expert*

Redjai presents meaningful argument only for the evidentiary ruling sustaining Barrett's objections to Giddings's declaration.  Accordingly, Redjai's appellate challenges to other rulings have been waived.  (See *Cahill, supra*, 194 Cal.App.4th at p. 956.)  Barrett objected to portions of Giddings's declaration on the ground it offered

12

improper legal opinions and the court sustained the objections, concluding the declaration "contain[ed] improper expert testimony and legal opinions." We review the ruling for abuse of discretion (*Reid, supra*, 50 Cal.4th at p. 535) and conclude Barrett's objections were correctly sustained.

As explained in more detail in *Redjai I, supra*, G058005, Giddings's legal conclusions about documentary evidence were properly excluded. Giddings based her opinions on conjecture or speculative matters. (*Korsak v. Atlas Hotels, Inc.* (1992) 2 Cal.App.4th 1516, 1524.) For example, although she asserted the inclusion of "Trust Fund" in the beneficiary name of the 2011 assignment meant it "would [not] be able to serve as a REMIC trust and Securitization Trust," there is no meaningful factual basis presented to assess how Giddings arrived at that conclusion. (See *Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1321 [expert's "conclusory" opinion insufficient to establish triable issue of material fact].)

Giddings's declaration is rife with legal conclusions. For example, she declared Nationstar lacked a legally valid basis to proceed against Redjai because the correct legal entity did not assign its rights to Nationstar and therefore all the recorded assignments were void. Legal determinations reside with the courts, not with expert witnesses. (See *People v. Jones* (2013) 57 Cal.4th 899, 950 [improper for experts "'to testify to legal conclusions in the guise of expert opinion'"].)

The trial court properly sustained Barrett's objections to Giddings's declaration testimony and Redjai has not shown an abuse of discretion. We reject his appellate argument he was entitled to summary judgment for any of his initial complaint's causes of action premised on arguments that recorded documents were "void." In the trial court, Redjai asserted that Bank of America had discharged Redjai's refinance loan debt; however, he has forfeited that argument on appeal. (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 (*Pizarro*) [issue forfeited by failure to clearly identify in a heading, citing Cal. Rules of Court, rule 8.204(a)(1)(B)].) Redjai's appellate

13

contention that Barrett did not have legal authority to enforce the security interest arising from his 2005 refinance loan is not supported by Giddings's opinions.

## B. The Trial Court's MSJ Rulings on the Merits of Redjai's Causes of Action

### 1. Federal Debt Collection Practices Act

Redjai's sixth cause of action alleged Barrett violated the FDCPA because it attempted to collect a debt that was discharged by Nationstar's predecessor (Bank of America), misrepresented the amount of the debt, attempted to coerce payment by seeking nonjudicial foreclosure, and attempted to collect on amounts discharged in bankruptcy.

The United States Supreme Court recently held in *Obduskey v. McCarthy & Holthus LLP* (2019) ___ U.S. ___ [139 S.Ct. 1029] (*Obduskey*) that "but for [15 U.S.C. section] 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors" under the FDCPA. (*Obduskey*, *supra*, at p. ___ [139 S.Ct. at p. 1038].) Section 1692f(6) of title 15 to the United States Code prohibits taking or threatening nonjudicial action to dispossess property if there is no present right to possession, no present intention to take, or the property is legally exempt from being taken. (*Dowers v. Nationstar Mortgage, LLC* (9th Cir. 2017) 852 F.3d 964, 970-971.)

The only basis for alleging Barrett is a debt collector under the FDCPA is its role in the nonjudicial foreclosure proceedings in this case. (See *Obduskey, supra*, ___ U.S. ___ [139 S.Ct. at p. 1039].) Thus, Redjai can only claim Barrett violated the FDCPA if, as Redjai asserts in his appellate brief, Barrett "ha[d] no authority to act with respect as to his note, deed of trust, debt or property." (See 15 U.S.C. § 1692f(6)(A) & (B).) Given our conclusion *ante* that Redjai failed to show the beneficial interest of his trust deed is unenforceable as void, his contention that the FDCPA was violated fails under *Obduskey*. The trial court correctly concluded Redjai did not establish a right to judgment as a matter of law on his sixth cause of action.

## 2. Deceit

On Redjai's seventh cause of action for deceit, the trial court denied Redjai's MSJ because "Redjai ha[d] not met his initial burden on th[e] issue." The court correctly denied summary judgment. The well-established statutory privilege for a trust deed trustee such as Barrett protects a trustee's communications and publications during the nonjudicial foreclosure process, such as recording a default notice. (Civ. Code, § 2924, subd. (d).) Although there is a split of appellate court authority on whether the privilege is absolute or qualified (see *Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1337 (*Schep*)), that issue makes no difference here because Redjai's allegations amount at most to claims of mistake and not maliciousness.

To establish that Barrett acted maliciously in this case, Redjai asserts that Barrett either intentionally or with reckless disregard recorded the notice of trustee's sale while aware that Redjai was disputing the alleged debt amount owed. In addition to his theory of void beneficial interest assignments that we rejected *ante*, Redjai cites to Civil Code section 2934a, subdivision (a)(1), and the FDCPA to support his argument that Barrett acted maliciously. He asserts Civil Code section 2934a was violated by both the December 2015 and April 2016 substitution of trustee recordings—both designating Barrett as the trustee for Redjai's trust deed—because they were not "signed by the beneficiary of [Redjai's trust d]eed." However, even assuming without deciding that Civil Code section 2934a was violated, Redjai has failed to show how Barrett's filing of a default notice amounted to a "reckless disregard" for Redjai's rights, particularly because it is undisputed Redjai had stopped making any repayment on his underlying loan.

Similarly, Redjai's reliance on a purported violation of the FDCPA fails to demonstrate malice attributable to Barrett. Redjai repeats that there was an "ongoing dispute" as to how much money he owed on his unpaid home loan. He alleges that shortly after Barrett recorded the default notice, he demanded a validation of his debt and received differing information that varied by as much as $51,000. Redjai's complaint

15

and his separate statement of undisputed material facts in support of his MSJ show, however, that Barrett communicated two claimed balances—$397,145.53 in the default notice and $408,025.19 in a reinstatement quote sent to Redjai the following month. Even assuming these differing amounts demonstrated accounting errors, Redjai has failed to establish that they show intentional hatred, ill-will, or reckless disregard. (*Schep, supra*, 12 Cal.App.5th at p. 1337.) In sum, Redjai has failed to show the malice necessary to overcome the express privilege afforded to Barrett under Civil Code section 2924, subdivision (d). The trial court correctly found Redjai was not entitled to summary judgment on his seventh cause of action.

### 3. Unfair Competition Law

Redjai's fifth cause of action alleged Barrett violated the UCL. To prevail on a UCL claim, the plaintiff must prove the defendant engaged in an "unlawful, unfair, or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) The UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143.) Given our conclusion that the trial court correctly decided Redjai was not entitled to summary judgment on the causes of action discussed *ante*, it follows he was not entitled to summary judgment on his UCL claim.[5]

### 4. Declaratory Relief

In his 10th cause of action for declaratory relief, Redjai sought a judicial determination that Barrett did not have authority to enforce the security interest created

---

[5]  In addition to Redjai's failure to establish his entitlement to judgment as a matter of law on a predicate violation, as explained in more detail in *Redjai I, supra*, G058005, Redjai could not establish a private UCL claim, which requires a plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322.)

16

when Redjai obtained a refinance loan in 2005. The court denied Redjai's MSJ on this cause of action, concluding Redjai was "mak[ing] the same arguments in support of [his declaratory relief cause of action] as [he] made on" his other causes of action. We agree with the court that "Redjai's evidence [was] insufficient for him to prove [his] contentions [and c]onsequently," Redjai failed to meet his initial burden for entitlement to declaratory relief as a matter of law.

"'"'"The fundamental basis of declaratory relief is the existence of an *actual, present controversy* over a proper subject."'"'" (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 513, disapproved on other grounds *Yvanova, supra*, 62 Cal.4th at p. 939, fn. 13.) "Whether a claim presents an "'"actual controversy' [under] Code of Civil Procedure section 1060 is a question of law that we review de novo."'"'" (*Jenkins v. JPMorgan Chase Bank, N.A., supra,* at p. 514.) Outside of injunctive relief not sought here (e.g., Civ. Code, §§ 2924.12, subd. (a)(1), 2924.19, subd. (a)(1)), we do not recognize "preemptive suits because they 'would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature.'" (*Saterbak, supra*, 245 Cal.App.4th at p. 814; see *Perez v. Mortgage Electronic Registration Systems, Inc.* (9th Cir. 2020) 959 F.3d 334, 340 ["California law does not permit preemptive actions to challenge a party's authority to pursue foreclosure before a foreclosure has taken place"].)

Although Redjai acknowledges "that a homeowner does not have the right to preemptively challenge nonjudicial foreclosure," he nonetheless asserts the trial court erred "because [he] pled and provided evidence that at no time did Barrett have the legal right to act as to [his] debt, [d]eed, [promissory] note, or [p]roperty."

Given it is undisputed that a nonjudicial foreclosure has not been conducted on Redjai's property and none is pending, the trial court correctly concluded Redjai failed to establish undisputed facts supported his declaratory relief cause of action. In sum, the trial court correctly denied Redjai's MSJ.

17

III.     THE TRIAL COURT DID NOT ERR BY GRANTING BARRETT'S MJP

We review the trial court's order granting Barrett's MJP de novo.  (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 999.)  In doing so, we read the complaint as a whole and its parts in their context to give the complaint a reasonable interpretation.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)  We accept all properly pleaded material facts as true, but not contentions, deductions, or conclusions of fact or law.  (*Ibid*.)  "Where a demurrer is sustained or a motion for judgment on the pleadings is granted as to the original complaint, denial of leave to amend constitutes an abuse of discretion if the pleading does not show on its face that it is incapable of amendment."  (*Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1852.)

We review whether the court erred in granting Barrett's MJP for Redjai's fifth, sixth, seventh, and tenth causes of action in his initial complaint, for violation of the UCL, violation of the FDCPA, deceit, and declaratory relief.  For the same reasons we discussed in our review of Redjai's MSJ, we conclude the trial court correctly granted Barrett's MJP against Redjai's causes of action at issue on appeal.  The facts alleged were not sufficient to state these causes of action against Barrett.  Redjai cannot assert these claims before a foreclosure has occurred (see *Yvanova*, *supra*, 62 Cal.4th at p. 924); his causes of action fail for the additional reasons discussed *ante* explaining why the trial court did not err in denying his MSJ.  Redjai has not set forth any meaningful argument as to whether it was an abuse of discretion for the trial court to deny him leave to amend his declaratory relief cause of action.  Accordingly, he has forfeited the argument.  (*Pizarro*, *supra*, 10 Cal.App.5th at p. 179.)  The trial court's order granting the MJP provides no ground for reversal of its eventual judgment.

18

IV. THE TRIAL COURT DID NOT ERR IN SUSTAINING BARRETT'S DEMURRER TO REDJAI'S FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND

*A. Redjai's Procedural Objection to Barrett's Demurrer Is Without Merit*

Redjai challenges the trial court's ruling on Barrett's demurrer to Redjai's FAC on both procedural and substantive grounds. Procedurally, Redjai asserts the trial court abused its discretion by considering and ruling on Barrett's demurrer, filed June 2019, even though the court had earlier entered an order that "[t]he statutory motion cut-off date for pre-trial dispositive [motions would be] based on [a] trial date of February 11, 2019." When the court granted Barrett's MJP, the court included in its May 2019 minute order the following: "all statutory motion cut-off dates are not extended absent a finding of good cause and upon an order from the Court allowing such."

Redjai argues that because Barrett filed its demurrer before receiving leave from the trial court, the court erred in considering the demurrer on its merits. Redjai asserts the court "ratified Barrett's breach of the stipulation" regarding a dispositive motion deadline. (Capitalization omitted.) According to Redjai, the court should have granted his ex parte applications to enforce the stipulation and strike Barrett's demurrer.

Redjai's procedural challenge has no merit because every court has "the power to . . . [¶] . . . [¶] . . . provide for the orderly conduct of proceedings before it, or its officers." (Code Civ. Proc., § 128, subd. (a)(3); see *id.*, § 187.) The trial court did not abuse its discretion because considering the demurrer on its merits was a reasonable exercise of control over litigation and Redjai has not shown a violation of an applicable statute or rule.[6]

The change in the procedural landscape of the case when Redjai filed his FAC justified Barrett's demurrer to the FAC and Redjai fails to show the court's exercise

---

[6] Redjai also argues the trial court erred because its orders allowing Barrett's demurrer to proceed lacked explicit reasoning, but he does not cite to any statute or rule that required the court's reasoning to be explained.

19

of its wide discretion was unreasonable.  Given that the purpose of demurrers is to conserve judicial resources by weeding out nonmeritorious claims (see *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 440-441), allowing Barrett to attack Redjai's amended pleading by demurrer was reasonable.

Moreover, the legislature has expressed a public policy that a defendant's right to attack a complaint for failing to "state facts sufficient to constitute a cause of action" (Code Civ. Proc., § 430.10, subd. (e))—a ground Barrett's demurrer asserted and on which it succeeded—cannot be waived.  (*Id.*, § 430.80, subd. (a); *Henry v. Associated Indemnity Corp.* (1990) 217 Cal.App.3d 1405, 1413, fn. 8.)  If the trial court had agreed with Redjai and prohibited Barrett's general demurrer from being heard, that decision would have contradicted the public policy expressed in Code of Civil Procedure, section 430.80, subdivision (a).

Redjai argues the trial court's allowance of Barrett's demurrer was erroneous because only a violation of public policy could justify not enforcing a stipulation between parties.  Redjai cites to *DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, but his lack of meaningful discussion has forfeited the argument.  (See *Cahill, supra*, 194 Cal.App.4th at p. 956.)  We nevertheless note that *DVD Copy Control* is inapposite because the stipulation at issue in that case was contained in a commercial contract and addressed the type of damages that would be available to one of the signatories if litigation occurred.  The trial court did not abuse its discretion when it allowed Barrett's demurrer to be adjudicated on its merits.

*B. The Trial Court Correctly Sustained Barrett's Demurrer Without Leave to Amend*

In his appellate brief, Redjai discusses one point of material difference between the allegations of the FAC and those in the initial complaint.  The FAC includes allegations about a copy of Redjai's signed 2005 promissory note that was "provided by" Barrett to Redjai in January 2016, in response to Redjai's request for a debt validation.

20

Redjai alleges the copy of the note was "fraudulent as the [note's] indorsement to Countrywide[, i.e., the original beneficiary of Redjai's trust deed,] was intentionally and maliciously removed and [a copy of the note] was stamped as [a] certified true and correct copy of the original" note.  In his appellate brief, Redjai asserts "*Nationstar* provided [Redjai] a copy of the promissory note with Countrywide's indorsement removed."  (Italics added.)

Redjai's allegation that in 2016 Barrett delivered a fraudulent copy of the promissory note Redjai signed in 2005 does not support the FAC's deceit cause of action. "The elements of fraud that will give rise to a tort action for deceit are: '"(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) *justifiable reliance*; and (e) *resulting damage*."'" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974, italics added.)  Barrett contends there is "no plausible claim of detrimental reliance or of damages proximately caused by such reliance [and that t]he lack of causation is fatal."  In his reply brief, Redjai cites to his *initial* complaint and asserts he pleaded "that he detrimentally relied on [Barrett]'s representations and its willingness to foreclose while in a valid dispute regarding the debt as well as its lack of authority to foreclose without the legal right to do so and that he was damaged."  Redjai did not allege with particularity how he detrimentally relied on the purportedly fraudulent conduct by Barrett (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 ["In California, fraud must be pled specifically; general and conclusory allegations do not suffice"]) or how he could cure the deficiency through amendment, particularly given that the default notice was rescinded and no foreclosure sale ever occurred.  The allegations of the FAC failed to state a cause of action for deceit.

Given the lack of material difference between the allegations of the initial complaint and the FAC, the trial court correctly determined Redjai had failed to state sufficient facts to support the causes of action for violations of the FDCPA or the UCL.

21

As discussed *ante*, Redjai cannot assert his claims before a foreclosure has occurred, Redjai's FDCPA cause of action fails as a matter of law under *Obduskey, supra*, ___ U.S. ___ [139 S.Ct. 1029], and his UCL cause of action fails for lack of a predicate violation. Accordingly, the trial court correctly sustained Barrett's demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed.  Barrett is entitled to recover its costs on appeal.

FYBEL, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

MOORE, J.