Same memorandum as in *Tornatore v Bruno* (12 AD3d 1115 [2004]). Present—Pigott, Jr., P.J., Pine, Hurlbutt, Kehoe and Lawton, JJ.

◼ MARY LOU TORNATORE, as Executrix of SAMUEL T. TORNATORE, Deceased, Appellant, v RONALD BRUNO, Also Known as

RONALD D. BRUNO, Individually and as Executor of the Estate of DOMINIC J. BRUNO, Deceased, et al., Defendants, and 129 CANAL STREET CORPORATION, Doing Business as THE CRAZY CLAM, et al., Respondents. (Appeal No. 2.) [785 NYS2d 820]—

Appeal from an order of the Supreme Court, Oneida County (John W. Grow, J.), entered July 3, 2003. The order dismissed plaintiff's foreclosure action and directed the Oneida County Clerk to discharge plaintiff's mortgage.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously affirmed without costs.

Memorandum: These appeals involve the validity of mortgages on property located at 129 Canal Street in the Village of Sylvan Beach. Samuel T. Tornatore (Tornatore), now deceased, was a certified public accountant who did accounting work for Dominic J. Bruno, Dominic's son Ronald, and assorted Bruno family companies, through Tornatore & Company, CPAs, P.C. (Tornatore & Co.). In 1991, Dominic died owing debts to Tornatore & Co. and Ronald fell behind in making payments on the debts. Ronald granted Tornatore a mortgage to secure the indebtedness owed to Tornatore & Co. by Ronald and the various Bruno family companies. In 1994, Tornatore agreed to subordinate his mortgage to a mortgage granted by Ronald to another mortgagee, Rocco V. Altamuro (Altamuro), and the Altamuro mortgage was eventually assigned to Michael S. Miller (Miller). Miller is the operations manager of 129 Canal Street Corporation (Canal Corp.), the tenant of the subject property.

After Ronald died in 1997, Tornatore commenced a foreclosure action that was the subject of an earlier appeal before us. In *Tornatore v Bruno* (280 AD2d 894 [2001]), we modified a prior order of Supreme Court by denying Tornatore's motion for summary judgment and vacating the reference to a referee, and we remitted the matter to afford Tornatore the opportunity to seek a default judgment of foreclosure and to afford Miller and Canal Corp. the opportunity to seek permission to serve a late answer. On September 18, 2001, 2½ months after Tornatore's death, Miller commenced a separate action seeking to foreclose the Altamuro mortgage. After the parties moved and

cross-moved for summary judgment in Miller's foreclosure action, the court granted Miller's motion for summary judgment, dismissed the first amended answer of Tornatore's estate (estate), and purported to dismiss the estate's foreclosure action. In a separate order in the estate's foreclosure action, the court also dismissed that action and ordered that the Tornatore mortgage be discharged.

We reject the estate's contention that the court lacked authority to determine the validity of the Tornatore mortgage in Miller's action. By seeking payment out of surplus moneys from the sale of 129 Canal Street in Miller's action, Tornatore voluntarily subjected his own mortgage to a determination of its validity, and the estate suffers no prejudice from having that determination made upon its own motion (*see generally Lawrence Ave. Group, USA v Parnes*, 134 AD2d 172, 174 [1987]). Further, "[e]very person having any lien or encumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff" is a necessary party defendant in a foreclosure action (RPAPL 1311 [3]; *see also G. B. Seely's Son v Fulton-Edison, Inc.*, 52 AD2d 575, 577-578 [1976]; 9-2 Warren's Weed, New York Real Property, Mortgage Foreclosure § 5.03 [17], [18] [2004]). Thus, we conclude that, contrary to the estate's contention, Miller and Canal Corp. each had standing to contest the validity of the Tornatore mortgage.

Further, the court properly determined that the Tornatore mortgage was void for lack of consideration. The estate submitted no proof that there was any underlying obligation running from Ronald to Tornatore individually. Rather, Ronald's obligation ran to Tornatore & Co., a distinct corporate entity. "It has long been held that a mortgage is not valid and enforceable unless there is an underlying valid debt or obligation for which the mortgage is intended as security" (*Coronet Capital Co. v Spodek*, 265 AD2d 292, 292 [1999], citing *Beck v Sheldon*, 259 NY 208 [1932], and *Baird v Baird*, 145 NY 659 [1895]). "If the underlying indebtedness is found at a later time to be unenforceable for want of consideration, the mortgage, even if supported by its own consideration, will be of no effect" (9-1 Warren's Weed, New York Real Property, Mortgages § 5.01 [2004]).

We reject the estate's contention that equity requires recognition of the Tornatore mortgage. While "[a] court will impose an equitable mortgage where the facts surrounding a transaction evidence that the parties intended that a specific piece of property is to be held or transferred to secure an obligation" (*Allen v Union Fed. Mtge. Corp.*, 204 F Supp 2d 543, 546 [2002], *appeal dismissed* 71 Fed Appx 82 [2003]), "it is necessary that an

intention to create such a charge clearly appear from the language and the attendant circumstances. *Strict proof of such intention is required"* (*Pennsylvania Oil Prods. Ref. Co. v Willrock Producing Co.*, 267 NY 427, 434-435 [1935] [emphasis added]). Because the evidence of the intent of the parties is equivocal, the Estate has failed to meet its initial burden of establishing that intent (*see e.g. New York TRW Tit. Ins. v Wade's Canadian Inn & Cocktail Lounge*, 225 AD2d 863, 864 [1996]). Present—Pigott, Jr., P.J., Pine, Hurlbutt, Kehoe and Lawton, JJ.