# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**136**

**CA 13-00839**

PRESENT: SCUDDER, P.J., CENTRA, FAHEY, CARNI, AND VALENTINO, JJ.

---

MICHAEL A. LAWLER, PLAINTIFF-APPELLANT,

V                                                MEMORANDUM AND ORDER

KST HOLDINGS CORPORATION, ET AL., DEFENDANTS,
AND KEVIN S. TAILLIE, DEFENDANT-RESPONDENT.

---

HISCOCK & BARCLAY, LLP, ROCHESTER (GEORGE G. MACKEY OF COUNSEL), FOR
PLAINTIFF-APPELLANT.

ADAIR LAW FIRM, ROCHESTER (DONALD R. ADAIR OF COUNSEL), FOR
DEFENDANT-RESPONDENT.

-------------------------------------------------------------------------------------------------------------------

Appeal from a judgment (denominated order) of the Supreme Court,
Wayne County (Kenneth R. Fisher, J.), entered March 1, 2013.  The
judgment dismissed plaintiff's complaint.

It is hereby ORDERED that the judgment entered March 1, 2013,
insofar as it dismissed the foreclosure cause of action, is
unanimously vacated and the order dated August 3, 2010 is modified on
the law by granting that part of plaintiff's motion for summary
judgment with respect to the foreclosure cause of action, and as
modified the order is affirmed without costs and the matter is
remitted to Supreme Court, Wayne County, for further proceedings in
accordance with the following Memorandum:  Plaintiff appeals from a
judgment (denominated order) dismissing his complaint following a
bench trial in this mortgage foreclosure action, contending that
Supreme Court erred in denying that part of his pretrial motion for
summary judgment on his first cause of action, for foreclosure.  We
note at the outset that plaintiff's appeal properly brings up for
review the propriety of the order denying his pretrial motion (*see*
CPLR 5501 [a] [1]), and we further note that plaintiff has abandoned
any contention with respect to the denial of his motion concerning his
other cause of action, as well as the court's dismissal of that cause
of action following the bench trial (*see generally Ciesinski v Town of
Aurora*, 202 AD2d 984, 984).

The underlying facts are as follows.  Defendant Kevin S. Taillie
was the high bidder at the auction of the real and personal property
of the Ontario Golf Club (OGC) on January 9, 2007.  After making down
payments totaling $278,300, however, Taillie was underfunded and could
not close the purchase.  Plaintiff thereafter agreed to provide
Taillie with a $500,000 letter of credit that would have allowed
Taillie to obtain a "bridge" mortgage sufficient to close the

purchase. The record establishes that, in conjunction with plaintiff's agreement to provide the subject letter of credit, Taillie agreed, inter alia, that plaintiff would have a 51% ownership interest in defendant KST Holdings Corporation (KST), which at that point had not been formed, and that Taillie would own the remaining 49% of that company. KST was subsequently incorporated and, by separate certificates signed by Taillie and dated February 23, 2007, plaintiff was issued 51 shares in KST, and Taillie was issued 49 shares in that corporation. On the same day, Jason Roth, Esq., the attorney assisting in the purchase of OGC, transmitted to plaintiff a "Written Consent of the Officers, Directors and Shareholders of KST," which authorized KST to purchase the OGC real and personal property and to execute the documents necessary to finalize the "bridge" financing.

The closing on the OGC purchase was scheduled for March 7, 2007, but on March 6, 2007, Roth realized that KST was $30,000 to $35,000 short of the funds required for the closing. It is unclear on the record before us whether Roth represented both plaintiff and KST; according to plaintiff, there was such dual representation, but Roth has indicated that he represented only KST.

Upon then making an inquiry into the details of the bridge loan that Taillie had arranged, plaintiff determined that the OGC purchase was "doomed" and that the deal was "dead." In an effort to save the transaction, plaintiff wired to HSBC Bank (HSBC), the holder of the foreclosed mortgage on the OGC real property, the sum of over $1.5 million, which was the amount needed to close the purchase of both the real property and the personal property of OGC. According to plaintiff, at the time that money was wired plaintiff instructed Roth to put the OGC property solely in plaintiff's name.

Roth, however, failed to do so, and instead put the property in the name of KST. Upon learning that the subject property had been placed in the name of KST, plaintiff determined that "[t]he easiest and most efficient solution to correct [the] error and to secure [plaintiff's] loan was to have KST grant [plaintiff] a mortgage." At the first annual meeting of KST, Taillie was removed as an officer and director of that corporation, and two new directors were elected. KST thereafter resolved, inter alia, to borrow from plaintiff the precise sum wired by plaintiff to HSBC to close the OGC purchase, and to issue plaintiff a note and first mortgage payable in that amount. The note and the mortgage were later approved by KST's directors who were appointed at KST's first annual meeting, and the note and mortgage were subsequently recorded. KST also issued a note and mortgage to Taillie equal to the amount of Taillie's down payment on the OGC real and personal property and entered into a security agreement with plaintiff by which KST granted a security interest in all of KST's personal property as collateral to secure the payment of all obligations and liabilities of KST to plaintiff. After KST defaulted on both of the subject mortgages, plaintiff commenced this action.

We agree with plaintiff that the court erred in denying that part of his motion seeking summary judgment on the foreclosure cause of

action.  We therefore vacate the judgment and modify the underlying order accordingly, and we remit the matter to Supreme Court for the appointment of a referee to compute the amount due on the mortgage issued by KST to plaintiff.

With respect to that part of plaintiff's motion on the foreclosure cause of action, we conclude that plaintiff met his initial burden of establishing his " 'prima facie entitlement to judgment as a matter of law by submitting the mortgage [issued by KST to plaintiff], the underlying note, and evidence of a default' " (*Ekelmann Group, LLC v Stuart* [appeal No. 2], 108 AD3d 1098, 1099; *see Cassara v Wynn* [appeal No. 2], 55 AD3d 1356, 1356, *lv dismissed* 11 NY3d 919).  "The burden [thus] shift[ed] to the defendant[s] to demonstrate 'the existence of a triable issue of fact as to a bona fide defense to the action' " (*Rose v Levine*, 52 AD3d 800, 801; *see Ekelmann Group, LLC*, 108 AD3d at 1099; *Cassara*, 55 AD3d at 1356). Only Taillie opposed the motion, and he failed to meet that burden.

Taillie opposed the motion on three grounds, none of which has merit.  First, Taillie contended that plaintiff sought a controlling interest in KST only *after* executing the letter of credit, and Taillie thus implicitly contended that the monies wired by plaintiff to close the KST transaction were intended to be a capital contribution to KST. That contention lacks merit.  We conclude that the record establishes that plaintiff asked for a controlling interest *in conjunction* with his provision of the subject letter of credit, and that Taillie's contentions to the contrary were merely an attempt to raise a feigned issue of fact (*see generally Taillie v Rochester Gas & Elec. Corp.*, 68 AD3d 1808, 1809).

Second, Taillie explicitly contended that plaintiff financed the purchase of OGC real and personal property in exchange for control of KST.  That contention is belied by the record inasmuch as the stock certificates establishing that plaintiff had controlling interest in that corporation were signed and dated well before plaintiff wired approximately $1.5 million to finance the purchase of OGC.  We also note that plaintiff wired the monies directly to HSBC, not to KST, and that KST never received those monies.

Third, Taillie contended that the "Written Consent" form authorized acquisition of the bridge loan but not the financing provided by plaintiff, and was thus invalid.  Even assuming, arguendo, that such consent did not apply to the financing provided by plaintiff, we conclude for the reasons set forth above that the monies provided by plaintiff to complete the purchase of the OGC property were not a capital contribution to KST but, rather, those monies were a loan.

As previously noted, we are deciding this case on the ground that the court erred in denying that part of plaintiff's motion for summary judgment with respect to the foreclosure cause of action.  On this record, we conclude that it was the clear intent of the parties that KST would finance the purchase of the OGC real and personal property,

and that there is a valid obligation underlying the mortgage, i.e., the funds plaintiff wired to complete the OGC transaction for which the mortgage was intended as security (*see Tornatore v Bruno*, 12 AD3d 1115, 1117).  Contrary to Taillie's further contention, he failed to raise an issue of fact whether the mortgage is invalid because plaintiff was an interested director of KST at the time KST issued that mortgage (*cf.* Business Corporation Law § 713 [a], [b]).

Finally, in view of our conclusion, we do not address plaintiff's further contentions with respect to the judgment.

Entered:  March 21, 2014                          Frances E. Cafarell
                                                  Clerk of the Court