Auquilla v Villa (2025 NY Slip Op 02053)

Auquilla v Villa

2025 NY Slip Op 02053

Decided on April 9, 2025

Appellate Division, Second Department

Landicino, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 9, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
HELEN VOUTSINAS
CARL J. LANDICINO
JAMES P. MCCORMACK, JJ.

2020-08071
 (Index No. 58739/19)

[*1]Miguel Auquilla, et al., respondents-appellants,
v
Gladys Villa, et al., defendants, Deutsche Bank National Trust Company, etc., appellant-respondent.

APPEAL by the defendant Deutsche Bank National Trust Company, and CROSS-APPEAL by the plaintiffs, in an action, inter alia, pursuant to RPAPL 1501(4) to cancel and discharge of record a mortgage, from an order of the Supreme Court (Linda S. Jamieson, J.), dated October 2, 2020, and entered in Westchester County. The order, insofar as appealed from, granted those branches of the plaintiffs' motion which were for summary judgment on the causes of action pursuant to RPAPL 1501(4) to cancel and discharge of record the subject mortgage and denied that branch of the cross-motion of the defendant Deutsche Bank National Trust Company which was for summary judgment dismissing the complaint insofar as asserted against it. The order, insofar as cross-appealed from, denied those branches of the plaintiffs' motion which were, in effect, pursuant to CPLR 3211(a)(7) to dismiss the counterclaims of the defendant Deutsche Bank National Trust Company alleging unjust enrichment, to recover in quantum meruit, and for the imposition of an equitable lien and an equitable mortgage against the subject property to the extent those counterclaims allege that that defendant is entitled to reimbursement for certain expenditures it made to preserve and maintain the subject property.

Hinshaw & Culbertson LLP, New York, NY (Dana B. Briganti of counsel), for appellant-respondent.
Hilpert Law Offices, Croton-on-Hudson, NY (Robert Casey Hilpert and Jeff Rogan of counsel), for respondents-appellants.

LANDICINO, J.

OPINION & ORDER
This case presents several issues related to whether a mortgagee is entitled to recover sums expended to preserve and maintain an allegedly abandoned property under equitable and quasi-contractual theories. It also raises the issue of whether the owners of a property are entitled, pursuant to RPAPL 1501(4), to cancellation of a mortgage on the ground that the statute of limitations to commence an action to foreclose the mortgage has expired. For the reasons that follow, we conclude that the owners are entitled to cancellation of the mortgage and under the circumstances presented, the mortgagee is precluded from recovering under equitable and quasi-contractual theories.
I. Factual and Procedural Background
On September 6, 2005, the defendant Gladys Villa (hereinafter the borrower) executed a note that was secured by a mortgage on residential property located in Ossining (hereinafter the property). By bargain and sale deed dated March 8, 2006, the borrower retained a one-third interest in the premises for herself and conveyed the remaining interest to the plaintiffs, [*2]Miguel Auquilla and Hilda Guzman (hereinafter together the owners), as tenants in common. The borrower and the owners allegedly defaulted on their obligations under the note and the mortgage by failing to make the monthly payments due in December 2009, and thereafter.
On October 14, 2010, Deutsche Bank National Trust Company (hereinafter the mortgagee), as the apparent assignee of the note and mortgage, commenced an action (hereinafter the 2010 action) against the borrower and the owners to foreclose the mortgage. The owners interposed an answer to the complaint. In an order dated February 21, 2013, the Supreme Court directed dismissal of the complaint in the 2010 action pursuant to CPLR 3216 for neglect to prosecute.
On December 1, 2014, the mortgagee commenced a second action (hereinafter the 2014 action) against the borrower and the owners, among others, to foreclose the mortgage. The owners interposed an answer to the complaint. In an order dated April 17, 2017, the Supreme Court, upon the borrower's default, among other things, granted that branch of the owners' motion which, in effect, upon the borrower's default on the cross-claims against her, was for a declaration that the owners had sole title to the property [FN1]. In an order dated March 19, 2018, the court granted the mortgagee's motion for summary judgment on the complaint and for an order of reference and directed the mortgagee to move for a judgment of foreclosure and sale within three months of the date of the order. However, in a subsequent order dated December 20, 2018, the court granted the owners' motion to dismiss the complaint due to the mortgagee's failure to timely comply with the order dated March 19, 2018.
On June 6, 2019, the owners commenced this action against the borrower and the mortgagee, among others, pursuant to RPAPL 1501(4) to cancel and discharge of record the mortgage. The mortgagee interposed an answer by which it asserted, inter alia, counterclaims alleging unjust enrichment, to recover in quantum meruit, and for the imposition of an equitable lien and an equitable mortgage against the property. The mortgagee claimed, among other things, that the owners abandoned the property and, as a result, the mortgagee was "forced to protect its interest in the [p]roperty for the duration of the default." The mortgagee alleged that it advanced funds for the payment of property taxes, property insurance, property preservation fees, and other charges and costs, and sought to recover those funds.
In August 2020, the owners moved, inter alia, for summary judgment on their causes of action pursuant to RPAPL 1501(4) to cancel and discharge of record the mortgage and, in effect, pursuant to CPLR 3211(a)(7) to dismiss the mortgagee's counterclaims. The mortgagee cross-moved, among other things, for summary judgment dismissing the complaint insofar as asserted against it. The mortgagee submitted, inter alia, an affidavit from a senior loan analyst employed by its loan servicer, who stated that the borrower failed to make the monthly payments due on December 1, 2009, and thereafter, and failed to cure that default. The senior loan analyst also averred that the sum of $124,773.80 had been advanced to maintain the property, "including the payment of taxes, insurance, assessments, water charges, property inspection fees, and other similar charges." In support of that statement, the senior loan analyst annexed certain spreadsheets purportedly listing the payments that were made to maintain the property since 2009, which included periods during which the 2010 action and the 2014 action had been dismissed and were not pending. The senior loan analyst also stated that the loan servicer "regularly inspected the [p]roperty to determine whether maintenance [was] required and to confirm the occupancy status of the [p]roperty." In support of that statement, the senior loan analyst annexed a spreadsheet containing a list of purported inspections of the property that occurred, as well as several inspection reports dated from 2015 to 2019. Those inspection reports consistently indicated that the property was not vacant and that it was occupied.
In an order dated October 2, 2020, the Supreme Court, among other things, granted that branch of the owners' motion which was for summary judgment on the causes of action pursuant to RPAPL 1501(4) to cancel and discharge of record the mortgage and denied that branch of the mortgagee's cross-motion which was for summary judgment dismissing the complaint insofar as asserted against it. The court also denied those branches of the owners' motion which were, in [*3]effect, pursuant to CPLR 3211(a)(7) to dismiss the mortgagee's counterclaims alleging unjust enrichment, to recover in quantum meruit, and for the imposition of an equitable lien and an equitable mortgage against the property to the extent those counterclaims allege that the mortgagee is entitled to reimbursement for certain expenditures it made to preserve and maintain the property. The mortgagee appeals, and the owners cross-appeal.
II. Discussion
A. Owners' cause of action pursuant to RPAPL 1501(4) to cancel and discharge of record the mortgage
An action to foreclose a mortgage is governed by a six-year statute of limitations (see CPLR 213[4]; Mardenborough v U.S. Bank N.A., 201 AD3d 641, 643; Lubonty v U.S. Bank N.A., 159 AD3d 962, 963, affd 34 NY3d 250). "[E]ven if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt" (Lubonty v U.S. Bank N.A., 159 AD3d at 963 [internal quotation marks omitted]; see Mardenborough v U.S. Bank N.A., 201 AD3d at 643; Kashipour v Wilmington Sav. Fund Socy., FSB, 144 AD3d 985, 986). "Acceleration occurs, inter alia, by the commencement of a foreclosure action wherein the [holder of the note] elects in the complaint to call due the entire amount secured by the mortgage" (GMAT Legal Title Trust 2014-1 v Kator, 213 AD3d 915, 916). "Pursuant to RPAPL 1501(4), a person having an estate or an interest in real property subject to a mortgage can seek to cancel and discharge that encumbrance where the period allowed by the applicable statute of limitations for the commencement of an action to foreclose the mortgage had expired, provided that the mortgagee or its successor was not in possession of the subject real property at the time the action to cancel and discharge the mortgage was commenced" (Lubonty v U.S. Bank N.A., 159 AD3d at 963; see RPAPL 1501[4]; Mardenborough v U.S. Bank N.A., 201 AD3d at 643; Kashipour v Wilmington Sav. Fund Socy., FSB, 144 AD3d at 987).
Here, the owners established their prima facie entitlement to judgment as a matter of law on the cause of action to cancel and discharge of record the mortgage pursuant to RPAPL 1501(4), since the record reveals, and the mortgagee does not dispute, that an action to foreclose the mortgage was commenced in 2010 by the mortgagee and the complaint therein was dismissed for neglect to prosecute. The commencement of the 2010 action accelerated the debt and the limitations clock began to run at that time (see Wilmington Sav. Fund Socy., FSB v Burgress, 232 AD3d 933, 935; US Bank Trust, N.A. v Reizes, 222 AD3d 907, 909-910). Although the mortgagee also commenced an action to foreclose the mortgage in 2014, the 2014 action was also dismissed. As the instant action was commenced more than six years after the acceleration of the debt in the 2010 action, and any new action to foreclose the mortgage is time-barred, the owners are entitled to cancellation of the mortgage (see RPAPL 1501[4]; Collins v Bank of N.Y. Mellon, 227 AD3d 948, 950; Kashipour v Wilmington Sav. Fund Socy., FSB, 144 AD3d at 987).
In opposition, the mortgagee failed to raise a triable issue of fact as to its purported status as a mortgagee in possession of the property (see U.S. Bank Trust, N.A. v Yozzo, 199 AD3d 962, 964). "[T]he statute of limitations will not run against a mortgagee in possession, the theory being that the mortgagor's acquiescence to that possession is a continuing acknowledgment of the debt" (LaPlaca v Schell, 68 AD3d 1478, 1479; see Mardenborough v U.S. Bank N.A., 201 AD3d at 643). A determination as to whether a mortgagee qualifies as a mortgagee in possession for purposes of tolling the statute of limitations "requires an analysis of whether the mortgagee took full possession of the property pursuant to an agreement with the mortgagor" (Mardenborough v U.S. Bank N.A., 201 AD3d at 646). "Taking possession of the property means acquiring the benefits of possession, including the value of use, rents, and profits, as well as assuming all the legal duties and obligations that flow from possession" (id.).
Here, the mortgagee was permitted under the terms of the mortgage agreement to enter the property if, among other things, the property was abandoned. However, the terms of the mortgage agreement specifically stated that the mortgagee was under no duty to do so. As the owners correctly contend, the mortgagee's own evidence demonstrated that it did not have "full possession" of the property. In support of its cross-motion, the mortgagee submitted, inter alia, inspection reports, which reflected that the property inspectors repeatedly stated that the property was [*4]"owner occupied" or "occupied" and that the premises was in good overall condition [FN2]. The mortgagee submitted no evidence demonstrating that it ever entered the property to maintain it or to make repairs. Although the mortgagee submitted evidence suggesting that it paid the property taxes and insurance for the property, such activity alone is insufficient to establish the mortgagee's status as a mortgagee in possession (see id. at 645 [holding that a mortgagee was not a mortgagee in possession where it "merely exercised its rights under paragraph nine of the mortgage to [pay insurance and taxes,] conduct inspections, repair, and maintain the property while the mortgage foreclosure action was pending"]; cf. Hoye v Bridgewater, 134 App Div 255, 256). The mortgagee's remaining contentions on this issue are without merit. Thus, the mortgagee failed to demonstrate, in opposition, that it was a mortgagee in possession.
Accordingly, the Supreme Court properly granted those branches of the owners' motion which were for summary judgment on their causes of action pursuant to RPAPL 1501(4) to cancel and discharge of record the mortgage and denied that branch of the mortgagee's cross-motion which was for summary judgment dismissing the complaint insofar as asserted against it.
B. Mortgagee's counterclaims
An analysis of the mortgagee's counterclaims is not as straightforward. The mortgagee brought four counterclaims to recover funds allegedly expended to preserve and maintain the property after the owners allegedly abandoned it. The counterclaims sounded in unjust enrichment and quantum meruit, and sought the imposition of an equitable lien and an equitable mortgage against the property. According to the mortgagee, there was no contract governing the payment of funds to preserve and maintain the property since the mortgage was executed by the borrower, not by the owners.
1. Quasi-contractual theories of unjust enrichment and quantum meruit
"Quasi contracts are not contracts at all, although they give rise to obligations more akin to those stemming from contract than from tort" (Bradkin v Leverton, 26 NY2d 192, 196). "Briefly stated, a quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved. The law creates it, regardless of the intention of the parties, to assure a just and equitable result" (id.; see Furgang v Lenefsky, Meier & Novod, 109 AD2d 728, 728). In other words, a quasi contract "is not really a contract at all, but rather an equitable obligation imposed in order to prevent a party's unjust enrichment" (UETA Latinamerica, Inc. v Zafir, 129 AD3d 704, 705-706). "Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy" (Miller v Schloss, 218 NY 400, 407).
To recover under the quasi-contractual theory of unjust enrichment, a plaintiff must show "that the other party was enriched at his or her expense, and [that] it is against equity and good conscience to permit that person to retain what is sought to be recovered" (Daniels v Ruggiero, 230 AD3d 563, 565, quoting Delidimitropoulos v Karantinidis, 186 AD3d 1489, 1491). "The elements of a cause of action sounding in quantum meruit are (1) performance of services in good faith, (2) acceptance of services by the person to whom they are rendered, (3) expectation of compensation therefor, and (4) reasonable value of the services rendered" (Home Const. Corp. v Beaury, 149 AD3d 699, 702 [internal quotation marks omitted]).
Here, contrary to the contentions of the mortgagee, the mortgage agreement, which encumbered the property before the owners took possession and included some terms contained in the note for purposes of, inter alia, events of default, governs this dispute. That determination is fatal [*5]to the mortgagee's counterclaims sounding in quasi contract. "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter" (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388; see EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 23; Saadia v National Socy. of Hebrew Day Schs., Inc., 225 AD3d 806, 810). This is because a quasi contract is created by operation of law in the absence of an agreement between the parties to avoid injustice (see Bradkin v Leverton, 26 NY2d at 196; Hamlin Beach Camping, Catering & Concessions Corp. v State of New York, 303 AD2d 849, 852), and "a contract cannot be implied in fact where . . . there is an express contract covering the subject-matter involved" (Miller v Schloss, 218 NY at 406-407).
Here, the mortgage agreement states that the borrower is obligated to pay all charges and assessments associated with the property, that the borrower will protect and maintain the property, and that the mortgagee has the right to protect the value of the property by making certain expenditures [FN3]. The mortgage agreement specifically states that the mortgage on the property was to protect the mortgagee from "possible losses that might result if [the borrower] fail[ed] to," among other things, "[p]ay, with interest, any amounts that [the mortgagee] spends . . . to protect the value of the [p]roperty." The mortgage agreement also states, in a section titled "Lender's Right to Protect Its Rights in The Property," that the borrower would reimburse the mortgagee for certain sums expended to protect the property and that "[t]his [s]ecurity [i]nstrument will protect [the mortgagee]" in the event that the borrower does not pay those sums. The same section states that the mortgagee's right to expend sums to protect the property would be triggered in situations where the borrower, inter alia, failed to "keep [the] promises and agreements made in [the mortgage]" or "abandoned the [p]roperty." Since it is undisputed that the mortgage agreement governed the mortgagee's right to pay the costs associated with the maintenance of the property after the owners allegedly abandoned it and failed to keep their promise to pay property taxes (see Knox v Countrywide Home Loans, Inc., 205 AD3d 792, 793), the mortgagee's recourse was to proceed pursuant to its rights as contained within the mortgage agreement and, thus, the mortgagee was precluded from recovering on its unjust enrichment and quantum meruit counterclaims (see Klein v Deutsch, 193 AD3d 707, 709; Concavage Mar. Constr., Inc. v Lou-Al-John Corp., 191 AD3d 843, 845; D. Gangi Contr. Corp. v City of New York, 186 AD3d 450, 451).
The mortgagee's theory that the mortgage agreement does not govern the dispute since it was executed by the borrower and not by the owners is a novel one in this Court, but is ultimately unpersuasive. Although this Court has not explicitly recognized such a rule in this context, we now hold that there can be no quasi contract claim by a mortgagee against a third-party nonsignatory owner of property encumbered by a mortgage, the terms of which covers the subject matter of the dispute. The Court of Appeals has stated that "[i]t is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties" (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d at 389). Although the Court of Appeals has not considered whether that rule applies to nonsignatories of a mortgage agreement, it is nonetheless well settled that "[a] contract cannot be implied in fact where there is an express contract covering the subject matter involved" (Julien J. Studley, Inc. v New York News, 70 NY2d 628, 629).
In other situations outside of the context of a mortgage, the Appellate Divisions of the First, Third, and Fourth Departments have held that even where a defendant is a third-party nonsignatory to a contract, there can be no cause of action sounding in quasi contract where there is a valid contract in place and the contract covers the subject matter of the dispute (see e.g. Turan v Union Modular Homes, LLC, 234 AD3d 1063 [3d Dept] [procurement and construction contract]; Board of Mgrs. of the 15 Union Sq. W. Condominium v Azogui, 220 AD3d 405, 405 [1st Dept]; Seneca Pipe & Paving Co., Inc. v South Seneca Cent. School Dist., 63 AD3d 1556, 1557 [4th Dept] [construction contract]; Feigen v Advance Capital Mgt.. Corp., 150 AD2d 281, 283 [1st Dept] [*6][employment contract]). In each of those cases, the plaintiff was not entitled to recover under a quasi contract theory since there existed a valid contract that governed the dispute (see Turan v Union Modular Homes, LLC, 234 AD3d 1063; Board of Mgrs. of the 15 Union Sq. W. Condominium v Azogui, 220 AD3d at 405; Seneca Pipe & Paving Co., Inc. v South Seneca Cent. School Dist., 63 AD3d at 1557; Feigen v Advance Capital Mgt.. Corp., 150 AD2d at 283). Importantly, in each case cited above, the appellate court was required to consider whether a quasi-contractual obligation could be implied against a defendant that was a nonsignatory and nonparty to the express contract governing the dispute (see Turan v Union Modular Homes, LLC, 234 AD3d 1063; Board of Mgrs. of the 15 Union Sq. W. Condominium v Azogui, 220 AD3d at 405; Seneca Pipe & Paving Co., Inc. v South Seneca Cent. School Dist., 63 AD3d at 1557; Feigen v Advance Capital Mgt. Corp., 150 AD2d at 283). In other words, while the defendants in those cases were not subject to the terms of the contracts governing the disputes, the plaintiffs in those cases were nonetheless precluded from recovering under quasi-contractual theories because contracts existed that covered the disputes. While the owners contend that the cases cited above are indistinguishable from the present matter, we need not address whether nonsignatories and nonparties to the governing contract are subject to quasi contract claims here. Simply put, unlike in the cases cited above, here the owners are subject to the mortgage agreement, and the mortgage agreement governs the dispute.
For the purposes of considering whether the owners are subject to the mortgage agreement, it is immaterial that the owners did not individually execute the mortgage agreement. The mortgage agreement may be considered a contract between the mortgagee and the owners in this context even though it was executed only by the borrower since it evinces an understanding between the mortgagee and the owners, who obtained the property subject to the mortgage, that the property secured a prior loan and that enforcement of the mortgage through foreclosure was permitted upon default (see Bathgage v Haskin, 59 NY 533, 539 ["[T]he mortgage is a contract by specialty, and the primary object of the action is to enforce the lien created by it"]; see also UCC 9-102[55] [defining "mortgage" as "a consensual interest in real property, including fixtures, which secures payment or performance of an obligation" (emphasis added)]). "An action to foreclose a mortgage is not an action to recover the mortgage debt from the mortgagor personally, but to collect it out of the land by enforcing the lien of the mortgage" (Citibank, N.A. v Wu, 199 AD3d 48, 51 [internal quotation marks omitted]). The mortgagee thus agreed to take a security interest in the land by means of a mortgage of record, which would bind all future owners (see 436 Franklin Realty, LLC v U.S. Bank N.A., 188 AD3d 960, 962), and the owners obtained the property subject to the terms of the mortgage agreement. As such, while the mortgage agreement was not executed by the owners, the owners and the mortgagee intended that they all be bound by the terms and obligations contained therein by their conduct. The relevant inquiry here remains not whether the owners are signatories or nonsignatories to the mortgage agreement, but rather whether the mortgage agreement "cover[s] the subject matter involved" (Julien J. Studley, Inc. v New York News, 70 NY2d at 629).
Here, as discussed above, it is undisputed that the mortgage agreement provided that the mortgagee would have the right to pay certain expenses and assessments for its own benefit and to protect the value of the property in the event it was abandoned by the borrower. The mortgagee agreed that any such expenditures on behalf of the property would be secured by the property and could be recoverable in accordance with the mortgage agreement. Since the mortgagee's right to expend sums to preserve and maintain the property and the concomitant right to recover those sums arose from the mortgage agreement, the terms of the mortgage agreement govern the dispute and the mortgagee may not seek relief outside of the four corners of the mortgage agreement, since that is what the parties intended. Thus, the mortgage agreement plainly addresses the payment of the assessments and expenses at issue (see Bradley v New Penn Fin., LLC, 198 AD3d 1273, 1275).
There is nothing unjust or inequitable about holding the mortgagee to its contractual agreement to keep the property as security for the expenditures associated with the preservation of the property, and there is no need to imply any quasi-contractual obligation between the mortgagee and the owners. In other words, the mortgagee, by making payments to preserve and maintain the property that were expressly contemplated by the mortgage agreement and that were secured by the mortgage, has "performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties" (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d at 389). The mortgagee now may not seek to imply the existence of another obligation against the owners. In sum, we hold that there can be no quasi contract claim by a mortgagee against a third-party nonsignatory owner of property encumbered by a mortgage so long [*7]as the terms of the mortgage agreement cover the subject matter of the dispute.
Accordingly, the Supreme Court should have granted those branches of the owners' motion which were, in effect, pursuant to CPLR 3211(a)(7) to dismiss the mortgagee's counterclaims alleging unjust enrichment and to recover in quantum meruit to the extent those counterclaims alleged that the mortgagee is entitled to reimbursement of certain expenditures it made to preserve and maintain the property.
In light of our determination, we need not address the owners' contention regarding the voluntary payment doctrine.
2. Equitable mortgage
The mortgagee contends that it is entitled to an equitable mortgage in the amount of the sums expended to preserve and maintain the property after the owners' alleged abandonment. "The courts of equity in this State have adopted the general doctrines of the English Chancery upon this subject" (Chase v Peck, 21 NY 581, 584). "By the law of England, as administered in the Court of Chancery, an equitable mortgage may be created by any writing from which the intention to create it may be shown" (id. at 583). In other words, "an attempt to make a legal mortgage, which fails for the want of some solemnity, is valid in equity" (Payne v Wilson, 74 NY 348, 351). "While [a] court will impose an equitable mortgage where the facts surrounding a transaction evidence that the parties intended that a specific piece of property is to be held or transferred to secure an obligation . . . it is necessary that an intention to create such a charge clearly appear from the language and the attendant circumstances" (Fremont Inv. & Loan v Delsol, 65 AD3d 1013, 1014, quoting Tornatore v Bruno, 12 AD3d 1115, 1117-1118). However, the doctrine of equitable mortgage is inapplicable where a legal written mortgage exists (see Payne v Wilson, 74 NY at 351; 21st Mtge. Corp. v Nweke, 165 AD3d 616, 619), as the valid mortgage has already created a lien on the property (see RTT Holdings, LLC v Nacht, 206 AD3d 836, 841; Bean v Walker, 95 AD2d 70, 72).
Here, it is beyond dispute that there was a mortgage of record that secured the loan given by the mortgagee. The mortgagee commenced two prior foreclosure actions to enforce that mortgage. It now cannot take the position that the mortgage did not constitute a lien on the property. The mortgage also secured any payments made by the mortgagee to protect the value of the property. The mortgage agreement, by its very terms, specifically granted the mortgagee the right to recover the sums expended to preserve and maintain the property in a foreclosure action. Thus, the mortgagee could have enforced its rights under the mortgage agreement to recover the sums expended to preserve and maintain the property without resorting to the principles of equity (see generally Town of Venice v Woodruff, 62 NY 462, 467 ["There must exist some circumstance establishing the necessity of a resort to equity, to prevent an injury which might be irreparable, and which equity alone is competent to avert"]; Minturn v Farmers' Loan & Trust Co., 3 NY 498, 500). "The law is well settled that where a party has a full and adequate remedy at law which, through neglect, is not pursued, equity will afford no relief" (McPherson v C.U.L. Realty Corp., 270 App Div 1, 2; see Schroeppell v Shaw, 3 NY 446, 452). The mortgagee failed to enforce its rights under the mortgage agreement in the 2010 action, since it neglected to prosecute that action, and then failed to comply with a court order in the 2014 action, leading to the dismissal of the complaint in that action and the expiration of the statute of limitations to commence a foreclosure action. As such, the mortgagee cannot now claim entitlement to a third bite at the apple by seeking an equitable mortgage.
Accordingly, the Supreme Court should have granted that branch of the owners' motion which was, in effect, pursuant to CPLR 3211(a)(7) to dismiss the mortgagee's counterclaim for the imposition of an equitable mortgage against the property to the extent that counterclaim alleges that the mortgagee is entitled to reimbursement of certain expenditures it made to preserve and maintain the property.
3. Equitable lien
The mortgagee further contends that it is entitled to the imposition of an equitable lien in the amount of the sums expended to preserve and maintain the property after the owners' alleged abandonment. Whether the mortgagee is entitled to an equitable lien against the property is dependent on whether the expenditures to protect the property were made "based on a promise to convey, reimburse, or grant a lesser interest in the property" (Bolender v Ronin Prop. Partners, LLC, 168 AD3d 1032, 1035). "The agreement must deal with some particular property either by identifying it or by so describing it that it can be identified and must indicate with sufficient clearness an intent that the property so described or rendered capable of identification is to be held, given or [*8]transferred as security for the obligation" (Teichman v Community Hosp. of W. Suffolk, 87 NY2d 514, 520 [internal quotation marks omitted]). "New York law does not allow the imposition of an equitable lien unless there is an express or implied agreement that there shall be a lien on the specific property at issue" (Matter of Saadia Safdi Realty, LLC v Melvin Press, 207 AD3d 633, 635).
Under the circumstances of this case, although the mortgage agreement appears to be an express agreement that the payments at issue would be secured by the property (see Matter of Saadia Safdi Realty, LLC v Melvin Press, 207 AD3d 633), an equitable lien in this instance is simply an equitable mortgage upon the property by another name. Such an equitable lien would essentially be enforced the same way as a equitable mortgage, i.e., through foreclosure on the property (see e.g. Amtrust-NP SFR Venture, LLC v Thompson, 181 AD3d 762; Sharestates Invs., LLC v Hercules, 178 AD3d 1112). As discussed above, the mortgagee is not entitled to an equitable mortgage, and the principles of equity would not be advanced if the formation of an equitable mortgage here was barred but the formation of an equitable lien was allowed. Given that "[t]he power of equity is as broad as equity and justice require" and courts of equity may "mold each decree to the necessities of the particular case" (Dickerson v Thompson, 88 AD3d 121, 123 [brackets and internal quotation marks omitted]; see Weinberger v Romero-Barcelo, 456 US 305, 312; State v Barone, 74 NY2d 332, 336; Hampar v Hampar, 285 App Div 1053, 1053), it would be inappropriate and unjust in this circumstance to allow the mortgagee, which had the opportunity to recover the alleged sums expended by enforcing the terms of the mortgage agreement, to obtain an equitable lien.
The mortgagee's remaining contentions are without merit.
In light of the foregoing, we need not reach the issue of whether the mortgagee's counterclaims are barred by the relevant statutes of limitations (see generally Matter of Hughes v Doherty, 5 NY3d 100, 107; Orzechowski v Warner-Lambert Co., 92 AD2d 110, 117-118).
Thus, the Supreme Court should have granted that branch of the owners' motion which was, in effect, pursuant to CPLR 3211(a)(7) to dismiss the mortgagee's counterclaim for the imposition of an equitable lien against the property to the extent that counterclaim alleges that the mortgagee is entitled to reimbursement of certain expenditures it made to preserve and maintain the property.
III. Conclusion
Accordingly, the order is affirmed insofar as appealed from, reversed insofar as cross-appealed from, on the law, and those branches of the owners' motion which were, in effect, pursuant to CPLR 3211(a)(7) to dismiss the mortgagee's counterclaims alleging unjust enrichment, to recover in quantum meruit, and for the imposition of an equitable lien and an equitable mortgage against the property to the extent those counterclaims allege that the mortgagee is entitled to reimbursement for certain expenditures it made to preserve and maintain the property are granted.
BRATHWAITE NELSON, J.P., VOUTSINAS, and MCCORMACK, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from; and it is further,
ORDERED that the order is reversed insofar as cross-appealed from, on the law, and those branches of the plaintiffs' motion which were, in effect, pursuant to CPLR 3211(a)(7) to dismiss the counterclaims of the defendant Deutsche Bank National Trust Company alleging unjust enrichment, to recover in quantum meruit, and for the imposition of an equitable lien and an equitable mortgage against the property to the extent those counterclaims allege that that defendant is entitled to reimbursement for certain expenditures it made to preserve and maintain the subject property are granted; and it is further,
ORDERED that one bill of costs is awarded to the plaintiffs.
ENTER:
Darrell M. Joseph
Clerk of the Court

Footnotes

Footnote 1:On appeal, the parties do not contest the propriety of this order or dispute that it had the effect of validly granting the owners sole title to the premises.

Footnote 2:Specifically, the record contains exterior inspection reports from as early as January 2, 2015. In a section titled "Vacancy Information," the inspection reports contain the following question: "Is the property vacant?" The inspector answered "No" in every inspection report in the record that contained that question, 30 of which were prepared from January 2, 2015, until February 26, 2019. The later inspection reports in the record, dating from April 1, 2019, to July 9, 2019, do not contain that question. Nonetheless, every inspection report in the record, from January 2, 2015, to July 9, 2019, states that the property was "occupied" or "owner occupied."

Footnote 3:We note that the mortgage agreement consists of a 17-page document, but the record on appeal does not contain page 16 of the mortgage. Nonetheless, the parties rely on the document as presented in the record and do not purport that any relevant material is contained on page 16 of the mortgage agreement.